Good afternoon, Your Honors. My name is Mark Czarnoski, and I am from Gordon Silver in Las Vegas, representing Appellants Helen Bagley and 1st Global Stock Transfer. Mr. Hall, who is representing Appellant Dvorak, has kindly given me two and a half minutes of his time, so I will be using ten minutes and he'll be using five. Your Honor, this case presents this Court with the first opportunity for any Court in the country to clearly articulate the factors that are to be considered in determining whether a stock transfer agent can be a necessary participant and substantial factor in an unregistered distribution of shares. I'd like to start where I hope you end, which is the holding I'm urging you to have, and that is that a stock transfer agent who does not participate in the planning or management of a scheme to distribute unregistered securities and has not employed others to sell or offer them is not a necessary participant or substantial factor in the distribution. He or she is at most a fringe participant who can only be liable in an SEC enforcement action as a potential aider and a better. The alternative holding that I'd encourage you to have is that a stock transfer agent can only be a substantial factor or a necessary participant in a scheme to sell unregistered securities if he or she knew or should have known of the illegality of the distribution. You're faced with a threshold issue as I see this in this case, and that is first, is a stock transfer agent, by virtue solely of the services it provides, always a necessary participant and a substantial factor in the distribution of securities? That appears to be what the district court ruled in making its finding of liability, and it appears to be the position of the Securities and Exchange Commission. They argue that because but for a stock transfer agent issuing shares, taking a legend off, there could not be a subsequent sale of an unregistered security. The district court seemed to rely on the number of shares that were transferred as part of this process. Is that part of the test or not? You know, Your Honor, that's a great question. My answer is absolutely not. You have to look at whether or not a stock transfer agent is performing a ministerial function or whether they are performing a substantially important role in the distribution of these securities. But it goes to your other point, Counsel, doesn't it, about knew or should have known. At what point does the light go off? And as my colleague mentioned, there were a lot of shares here, and not only that, a lot of transactions. Your Honor, in this case there was 450 legends lifted from a security. As I put in my reply brief in a case file just shortly after my case was filed by the SEC, the Spongetech case, there were 211 letters that were issued and 900 million shares of stock that were issued in unregistered distributions. No claims whatsoever that there is an unregistered distribution and a claim of stock transfer agent liability. I mean, if you're going to start looking at the sheer numbers, what is the number? What can a stock transfer agent rely on? Is it one certificate and 800 billion shares? Is it 10 and 200 million? Is it 221 and 900 million? There's no way of knowing. Counsel, I want to move back one step and find out from you where in the statute you see the opportunity for an exception for reasonable reliance or for the knew or should have known. I guess it seems a number of courts have looked at this, it seems to me, as more of a strict liability question, which takes you back to your first issue, which is strict liability for whom and in what circumstances. Yes, I'd encourage you to do the first formulation for that very reason, but you don't find it within the statute. In the statute, there clearly is no scienter requirement for the direct seller. What has happened judicially is you all and your brethren have created this concept that an indirect seller can now, if he is a substantial factor and a necessary participant, he can now fall under this statute. So when you look at SEC v. Rogers, which is where you see . . . Well, indirect also comes from the statute. It's not purely a judicial gloss, is it? Well, I believe that the language is seller. It mentions seller and it defines seller. Right, but it shall be unlawful for any person directly or indirectly to do a number of things. So indirect is there. Yes, but I believe that SEC v. Rogers is what this district fleshed the meaning of that out. And what they said is one who plans a scheme or at the least is a substantial motivating factor behind it can be concluded as one of these substantial participants, indirect sellers. Now, doesn't that in and of itself presume some level of knowledge of the scheme? If you're the creator of it or you are the motivating factor behind it, then you have had to have had some level of knowledge as to the scheme itself. And in every case that we're looking at in terms of any stock transfer agent that has been held liable, it is based upon that person also being one of the people who is within the team, the group of people who conceived the scheme or somehow or other was one who had stock that they sold and made money as part of the scheme. I'm sitting here representing a client who did nothing but obtain the direction from the issuer with two opinions of counsel because she requested a second one to guide her in terms of whether she issued the stock, never owned a share of stock, and never received anything in exchange for the stock except for $15 a stock certificate. Can I ask a clarifying question here? Yes, sir. Are you arguing that the new or should have known standard should replace strict liability in the case of a transfer agent or are you arguing that this negligence reasonableness standard should be a factor in considering whether a transfer agent played a substantial role? And that's where the district court, I believe, made their error. The district court started and said, well, yes, we have the stock transfer agent basically for all purposes meets the substantial factor and necessary participant test. He then looked at the issue of the opinion letters and phrased it as if we were having an affirmative defense of reliance on opinion of counsel. There is no defense of reliance of opinion of counsel for this particular violation. What I'm suggesting you need to do is look at whether or not that person, the stock transfer agent, had reasonable basis to issue the shares of the stock certificates before you find them to be a necessary or substantial participant. What would have prevented the trial court judge in this case from looking at this evidence, including your client's statement, and saying no reasonable fact finder could disagree? This person was a substantial factor because. And then sort of fill in the blank with the evidence in this case, including your client's statement. Well, I'm going to ask you to be part of my jury. And I got to tell you, as a trial lawyer, I would love to make this argument in front of a jury. And that is that the SEC has claimed there are a certain number of red flags that have appeared in this case. My client, in recognition of those red flags, didn't sit back and did nothing. My client demanded and told the issuer, I will not issue any more securities unless you get a second opinion of counsel. And so they go out and they get a former SEC staff attorney, a well-known national securities firm, to issue a second opinion letter as to each and every one of these transactions. And but for that second opinion letter, my client never would have issued the shares that she did issue. And when I'm, I mean, what more? If you are my jury and I have 12 people, what more should my client have done? Well, I might have an answer to that. But a question that I couldn't find anywhere in the briefing is, at what point in the sequence of these 450 transactions did she raise her hand and say, I need a second opinion? Well, you know, we don't have the specific whether there was 100 before and 250 after. We have a conspiracy from, alleged, from 2003, I think, through 2007. And the second opinion was asked for halfway through 2004. So we have something that was done. And so, I mean, is my client expected to get three opinion of counsels? Is she expected to get four? At what point does she meet whatever standard is applicable to her? And I would readily suggest to you that you as a court have to do what other courts have done. You have to look at the practical realities of what a stock transfer agent does and what they charge. My client charged $15 a certificate. Is it even remotely plausible that the courts of this land can impose upon stock transfer agents who get paid $15 for their services per transaction to go out and hire their own independent lawyers? If a court decides to do that, then you have fundamentally changed the nature of the stock transfer business and the securities industry. Counsel, you're eating into your co-counsel's time, which you are free to do. It's between the two of you, but you won't get extra from us. Your Honor, I can't do that to my co-counsel. I know you have read all the other, not my co-counsel, but other counsel. I know you have read the area of discouragement, and I also believe that there's just no evidence whatsoever to support that discouragement. I'm not in a big firm, I'm essentially just a sole practitioner. Right or wrong, we chose to stand mute in this case because we felt like the SEC had sandbagged us. When Dvorak came to give a deposition in July of 2009, he'd been indicted since April and didn't know it. He'd already cooperated. They subpoenaed him in twice. He came to L.A. twice and talked to them, and I was there with him both times. And then they subpoenaed him, brought him to Denver because he was living in Boulder at the time. Now, this is a man who used to practice law full-time. Now he's a representative at an Apple store making $11 an hour. He's soured on practicing law as a result of this case and some other things. He's still licensed to practice. Nevada's sought disciplinary action against him. They've stayed it pending the outcome of everything in this court, the civil case and the criminal case, because the criminal case is still pending as well. But that was part of my argument that SEC got a $400,000 judgment against him when they've got $100 million against everybody else, $100 million in judgments. And he's going to have to bankrupt it because he just can't pay it. Not at $11 an hour, he's not going to be able to pay it. The criminal case is on hold because Edwards is not yet back. He was indicted along with everybody else, and he's been fighting extradition since 2009. He's in jail supposedly in England. They had a hearing. He's been ordered to return, but he's not here. And as a result of that, the criminal case isn't going anywhere because he's the lead defendant. It's U.S. v. Edwards. Cassavant, I understand, has become a snitch for the government, but we don't know that. He's walking around in Saskatchewan free. He hasn't even been arrested yet. Now, the Canadian government, I know, is hard to send people back to the United States for a fraud trial, but nevertheless, they would for a murder case, but they don't seem to want to do it for this case. On the stay order, I submit to you that the stay order violates Article III because nowhere in the order, and there's no order of reference of that stay order to the magistrate. When I realized this, it was after I'd written the other issues for the brief, and I looked at the stay order and said, where's the order of reference? I went back to the docket sheet. There isn't one. I went to the local rules. There's nothing. And then I realized, well, wait a minute, I don't know all these judges that well. It's not like my local court where I know all the players. I'm in front of them all the time. It didn't dawn on me at the time I read it that the magistrate issued the stay order, not the district judge. So the stay order from the very beginning was not issued by an Article III judge. It wasn't a reference at all. The government's position is we should have just appealed it. Well, it doesn't even put you on notice to appeal it. There's nothing in there that says that. It's not like the average R&R I get when I file a motion to suppress a criminal case, that the magistrate heard this, you've got 14 days to object to the district court and make your objections known and then it'll be decided. There's nothing like that. There's not a word in it about there being any opportunity to take it to the district court. That being the case, it's jurisdictional failure from the very beginning because Article III is jurisdictional. It can't be waived by anybody. And if the magistrate didn't have jurisdiction, then the stay order should have been granted in the first place. It needs to be sent back for that to occur. The stay itself should have been granted for the reasons I talked about that we felt like we were sandbagged if we had gone to the government and said, okay, we'll talk to you anyway. I'm not saying that Mr. Dvorak wouldn't have given them the story because he's only named in four places in an 87-page indictment. He's the last named defendant. Yet he's a lawyer charged with a serious crime that's been pending now for four years. And this case has ended his marriage. His wife divorced him. She's moved to Hawaii. He's working in an Apple store. His life is over. And all he's got to do now is defend this case. And we will defend it. Counsel, your time has expired, so perhaps you could sum up briefly. On the motion for summary judgment, I don't want to waive that issue, but it concerns me that the government at the trial court level, not Mr. Appellate Counsel is here, but at the trial court level didn't act with complete candor toward the district court concerning the amount of money involved. When we went through that deposition, we put all his trust account records into that deposition. And we couldn't even afford to buy the deposition. If it wasn't for frequent flyer miles, I wouldn't be here for this argument. Because he's broke. And I can't afford to finance it, and I'm not going to. So as a matter of principle, we refused to buy the deposition. It was $800. They wouldn't even give us a copy of it. We called him and asked him. No, you can't have it. So we're stuck. Right or wrong, we chose to play it that way. Thank you, Counselor. I appreciate your argument. We'll hear from the SEC. May it please the Court, I'm Alan Caputi for the United States Securities and Exchange Commission. We've just heard that if this court says that transfer agents are strictly liable for violations under Section 5, it's going to turn the transfer agent industry upside down. The real sea change would be if this court found that transfer agents were not strictly liable. Well, I'm not sure that strict liability is the end of the question. Assuming that a transfer agent can be strictly liable, the question really is in what circumstances is that the case? Are they liable every single time they act, or are they liable if they are a substantial or necessary participant? So really, I'm not sure that you've set up the right dichotomy. It sounds like both of you agree that in certain circumstances, a stock transfer agent like anyone else can be strictly liable, but the question is when is that? Is it a per se rule or not? In Murphy, this court decided that the statute language, interpreted the statute language, the statutory language says that a person is liable if they sell directly or indirectly. Murphy defines what indirect means. It means you are a necessary participant or a substantial factor. If you are a necessary participant or a substantial factor, you are strictly liable, primarily liable. Well, what I'm trying to understand is whether it is your position that a transfer agent is always a necessary participant or a substantial participant solely by virtue of being the transfer agent. Is that your position? Generally, yes. But I think I would look at the facts of each case. Wait, you can't have it both ways. Either that is a per se rule or you look at the facts of each case. I'm trying to understand which is your position. Your Honor, let's take a case where . . . Please answer my question. It would be helpful to me, even if it's a dumb question. Our position is that where a transfer agent is a necessary participant and substantial factor, they are always strictly liable. Generally speaking, I would say yes. A transfer agent, the answer to your question would be yes. So just by virtue of being a transfer agent, your view is that's enough under Murphy and the other cases? Yes. There may be cases, however, for example, if there are 200 transfers, 200 times the restrictive legend is taken off. But let's say the first . . . There was one transfer agent who took the restrictive legend off of one certificate and then said, I'm not going to do this again. And so he tells the issuer, go find another transfer agent. That person, you wouldn't say was a substantial factor. Exactly. And so it sounds to me like what Judge Graber is trying to get you to grapple with is part two. It's a two-part test, not a one-part test. It is. It sounds to me like you're in danger of collapsing a two-part test into a one-part test, into just but for the prong one. And so why isn't the substantial factor part of the test inherently a question of fact? After all, you started your answer with it depends. That sounds like a question of fact. I would say it's a question of fact in some circumstances, yes. But generally in these kinds of schemes, the transfer agent is going to be a substantial factor and a necessary participant. Can you cite other cases where transfer agents have been found liable as a substantial participant under Section 5? Yes. We've cited one case which is, oh, gosh, Nolto, I think it's on page 61, or I think page 60 or page 61. It was Nolto Colts. There's a case that came out just this past September. It's called SEC versus alternative green technologies. It's a case where a transfer agent was found liable as a necessary factor, a necessary participant substantial factor. Another case would be Alliance Transcription Services. And a fourth case would be SEC versus BOOC, B-O-O-C-K. Now, I think at least in two of those three cases, the transfer agent also was found to be liable of standard violations. I don't know if that was the case in green technologies. But the analysis in those cases is separate. You have an analysis of the 10B-5, and then you have a separate analysis under Section 5. Which involves facts. Yes. It is a factual determination. It's a factual determination in the cases that I posited, where you might have two transfer agents and one says, you know, I'm not going to do this anymore. I'm going to tell the issuer that he has to find another transfer agent. And in those circumstances, it wouldn't be a substantial factor. So then your answer to my first question really would be no, that a person is not liable under Section 5, merely by virtue of being a transfer agent without anything more. It's not a per se rule. Because in your example, they were a transfer agent. So if that's enough, then they would be liable. So it takes you beyond that. So what is the minimum that a person has to do for them to be substantial? In your example, if there were only two shares sold and the transfer agent had done one of them, would that make them substantial? I mean, how do we decide? Under the substantial factor test, someone is liable if their participation was not de minimis. If it's two out of 250, if it's two shares out of 2 million shares, then it's de minimis. What should we do with the evidence? And I'll grant you there's some evidence, including statements, that are concerning to defense counsel. You were pretty upfront about that. But what about the fact that she not only required the one lawyer's letter, but she required a second one? The second letter is derivative of the first letter. Well, the second letter says it relies in part on the first letter, but it also makes the assertion that they've looked at the underlying document. Well, he says in the second letter, Roger Glenn, that as far as for the requirements of Rule 144K, if you look at what he's relying on Dvorak for, he's relying on the fact that 144K was satisfied, that these shares were duly issued and authorized earlier. And that would bring them within the scope of 144K. And so what you've got is one letter is derivative of the other, which is why both letters went to the transfer agent. And is your thought that it's reasonable for us to expect that a transfer agent is going to appreciate the nuance that you're arguing now? As a matter of law. You're asking us to make that inference as a matter of law, because you obtained summary judgment. So I guess that's my problem, not that you might not ultimately be able to prove it, but that there's no factual development. It sounds to me like a good argument to make to a jury. Well, Your Honor, all transfer agents are aware that they're liable under Section 5. I've cited cases where transfer agents have been sued for refusal to transfer stock, for wrongful refusal to transfer. And the reason why the transfer agent did not is because the transfer agent thought they might be liable under Section 5. Transfer agents have insurance because of Section 5. They have indemnity agreements because of Section 5. They have surety agreements because of Section 5. They are allowed to bank the shares under their agreement with the issuer if they feel that the time requirements of 144K have not been met. If you were to read into the statute a culpability requirement, transfer agents would be less careful than they are now, and then we really would have a problem. What would we do then with the substantial factor language? If it doesn't require sifting through the facts to look to see how culpable at what point somebody should have known, what would we do with that second part of the test from Murphy? Well, they don't. You're saying that you have to restate the question for me, sir. Well, I'm just trying to get back to the fact that you seem to be saying strict liability means strict liability means strict liability, as though it was a but-for test. And that's how I read the first part of the test. But the second part is this substantial factor test that we've been grappling with that sounds to me to be inherently factual. I would probably . . . I think that . . . Yes, it is. Once it is met, you are liable, strictly liable. But yes, it is a factual determination because you have to determine whether or not their involvement, their participation was de minimis. Is it your position that the trial court judge in this case made a ruling essentially that a reasonable . . . this didn't need to go to the jury because no reasonable juror could disagree, given the facts in this case? Or is it your position that the trial court judge didn't go that far and just thought strict liability means but-for? No. I think the trial judge looked at both parts of the necessary participant substantial factor test and they said, Here we have a transfer agent that is asked to produce 279 new issues of share by the issuer under the pretense that the issuer didn't realize that 35% of his outstanding shares hadn't been issued yet. And then she takes the stock legend off based on opinion letters that say that on 450 occasions, 450 opinion letters saying that on 450 different occasions, 450 people came forward and say, Whoops, I was owed this, the stock, two years earlier. And now you have an opinion letter in front of you that says, Well, he was owed the stock two years before, and that just so happens to meet the requirements of Section 144, Rule 144K's holding period. Now, she admits, she admitted in her investigatory testimony, she admitted that she doubted that CKMK had that many shares outstanding. No transfer agent under those circumstances would have transferred this stock. But if her argument is that you should adopt the test, that is, whether or not she knew or should have known, when she admits that she had doubts that the issuer really had 279 million shares outstanding, she has basically admitted away her case. She's admitted liability. Opposing counsel's response, I'm confident because he's given it to us, was that she had red flags, and that's why she requested the second legal opinion. And the second legal opinion is really a ruse. It is really derivative of the first legal opinion. Global argues that they never transferred shares to Neve West, I believe it's called, and the district court seemed to rely on such a transfer in its finding under Section 5, and I don't believe you answered that argument in your brief. What is your answer on that? I think we did, actually. What happened here is Edwards, who was one of the organizers of this illegal offering. Didn't he do the transfers? Well, he came to, and he got the stock from Bagley, First Global. He took it to the broker, and the broker then calls Bagley to verify that the shares were duly issued, that she is duly issued and that she has rightfully taken off the restrictive legend. That allowed the 279 billion shares to go into the marketplace. Now, Bagley was the only transfer agent, and so there's only one place where those could have come from. And by giving them to Edwards, essentially she was transferring them to the broker for distribution. And, again, the broker calls Bagley to verify. So they all knew where they, there's no doubt that they knew where they came from, and the conduit would be Edwards. I'm afraid my time is up. It is. Thank you for your argument. You may sum up in a sentence or two, if you'd like. I can just sum up by saying that what transfer agents don't do is de minimis. What they do is very, very important for the reasons that we've said in our brief. Nothing that a transfer agent does is de minimis. That's why the Commission regulates transfer agents. They're an integral part of the transfer of the process, the national process for processing securities. And I think that it would really turn the law upside down if the substantial, the necessary participant substantial factor were not applied to them. And they shouldn't be given the liberty of that exception because we would then have a problem enforcing the law against transfer agents, who right now are very, very careful. Thank you. Thank you. The appellants have used their time, but you may have a minute for rebuttal if you'd like it. Thank you so much. I would like to address this concept of the second opinion being a non-opinion letter. I mean, you expressed it well. How is a lady who is not trained in law supposed to parse whether or not the second opinion letter relied upon the first opinion letter? The language of the opinion letter itself is just so extraordinary. It says, we have examined such certificates, certified copies of organizational and governance documents, certificates of good standing, certificates of factual matters, company resolutions, and other records, pertinent documents and instruments, and have investigated such other matters of law and fact as we have deemed necessary for the purpose of rendering the opinion set forth herein. That's what the lawyer said. It frosts me that that lawyer wasn't even charged in this case. He's a former SEC staff attorney. He's with a well-known securities firm. My client relied upon his opinion, and they don't even charge him as a necessary and substantial party. They skip right over him and come to my client. I find that to be offensive. I don't know what the reason is, and it's never been explained to me, but it shouldn't happen under the law that I have a client relying on that lawyer, and that lawyer isn't even charged by his former employers. If I could just really, this is what that lawyer said in his deposition. He said he felt it was reasonable for him to rely upon the opinions of the first lawyer, Mr. Dvorak, in writing and in his opinion letters. He stated that Dvorak's opinion letters were valid. That was what he said in his deposition. Counsel, you have exceeded your time, and we understand your point. Thank you. Thank you, counsel. The case just argued is submitted. We very much appreciate the arguments of all counsel in this very interesting and challenging case. It is submitted, and we are adjourned for the afternoon.
judges: Tunheim, Graber, Christen